UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| ROBERT GLEASON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No.: 3:13-CV-712-PLR-HBG |
| | ) |
| FOOD CITY 654, SAM TURNER, and | ) |
| BUCKY SLAGLE, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Plaintiff, Robert Gleason, acting *pro se,* has filed this action against his former employer, K-VA-T Food Stores, Inc., d/b/a Food City, Sam Turner, and Bucky Slagle. Gleason alleges he was subjected to a hostile work environment, and he was terminated from his employment after suffering a work-related injury. Food City has moved for summary judgment on Gleason's claims, asserting that (1) any claims for violation of Tennessee law are time-barred; (2) Gleason cannot show that he was disabled under the Americans With Disabilities Act (ADA); and (3) Gleason cannot maintain an action against Sam Turner or Bucky Slagle, in their individual capacities. For the reasons which follow, defendants' motion for summary judgment will be granted and this action dismissed.

## I. Background

Food City operates grocery stores in several locations in East Tennessee. Gleason was hired as a Bakery-Deli Manager on April 17, 2010. Gleason trained in several different stores, and became a Bakery-Deli Manager of the Lenoir City store in July 2010. In February 2011, Gleason transferred to the Clinton store, and remained there until his termination in December 2011.

A Bakery-Deli Manager is required to: (1) supervise employees in the department to maximize sales and profitability; (2) control labor costs; (3) provide training and development for employees; (4) implement marketing programs; (5) schedule work for employees; (6) communicate regularly with the store manager and Bakery-Deli employees; (7) attend department head meetings and communicate with other department heads; and (8) complete all departmental paperwork.

At the Clinton store, Gleason reported to Store Manager Sam Turner. Turner reported to the District Manager, Bucky Slagle. Food City also had a Bakery-Deli Supervisor, who supervised the Bakery-Deli operations in stores around the district. The Bakery-Deli Supervisor who worked with the Clinton store in 2011-2012 was Ron Coffman.

Prior to his November 2011 work injury, Gleason received several written disciplinary actions. On March 8, 2011, Turner issued Gleason a Written Correction Notice, when Gleason left the store without checking with a manager. Turner noted that the Department was not properly staffed, nor was it in good condition. Display tables were empty and product was in the back room.

2

On May 6, 2011, Turner issued Gleason another Written Correction Notice for not staffing the store for Mother's Day weekend. In addition, Turner found that sales in the Department were not in line with those of other departments in the store. Turner noted that if Gleason did not get his "personal issues resolved so he can properly manage the dept. further disciplinary actions up to and including demotion or termination will be taken." Gleason disputes that he left the Department understaffed. He states that he had made plans to be out of town that weekend well in advance, and that he made appropriate plans to staff the store before leaving.

On June 3, 2011, Gleason received another Written Correction Notice because he instructed his employees to shut down the hot bar early, in contravention of a Company email setting Bakery-Deli hours. Gleason contended that it had previously been a common practice to shut that area down early if business was slow.

On October 5, 2011, Turner issued Gleason a Written Correction Notice for unsatisfactory work performance. Turner noted that Gleason had worked until the store closed the previous night, October 4, and that the Bakery-Deli was in poor condition on the morning of October 5. Turner found that product had not been put away; back-up signature salads had not been made; product had not placed in a display case; and the fryers had not been filtered. Gleason disputed that the fryers had not been filtered, and disputed that the display case was not filled.

Gleason contends that the Bakery-Deli Department was understaffed and this caused performance issues within the Department. When Gleason brought this matter up in a meeting with Slagle and Turner, Slagle said that the Clinton store should hire more

3

people; however, Turner later instructed Gleason not to discuss staffing levels with Slagle again, saying that doing so would only cause problems.

On November 18, 2011, Gleason fell down some steps at the store. He sustained some contusions and a back strain. The physician at the emergency room held him out of work for three days, until November 22, 2011. Prior to returning to work, Gleason saw Dr. Lakia Brown. Dr. Brown issued a return-to-work report stating that Gleason could return to work on November 24, 2011, with certain restrictions: "limited prolonged standing," and "limited lifting," with a 10 to 15 pound limit.

Gleason asserts that Food City did not honor these work restrictions. He states that he worked twelve hours on his first day back. He also states that many items in the Bakery-Deli were heavier than his lifting restriction, but he was required to lift them anyway. Gleason states that Turner told him that other employees could help him move the pallet jack and items on it, but that another person was assigned to do so only once.

Gleason called Food City Claims Coordinator Peggy Parris to report that his work restrictions were not being honored. Parris told him to work within his restrictions, and indicated she would contact Turner. Gleason also told Coffman on two or three occasions that his restrictions were not being honored. Coffman indicated he would see what he could do to help, but Gleason states he never received additional help.

On November 29, 2011, Gleason submitted another note from Dr. Brown, which provided that Gleason was to work no more than eight hours per day, five days per week. Gleason states that these restrictions were not honored by Food City.

4

In December, Gleason missed a few days of work. Dr. Brown gave him a note stating that he could return to work on December 20, 2011. On the note, it appeared that the "20" had been written over another number. Turner noticed the revision, and contacted Claims Coordinator Parris. Parris asked Dr. Brown's office to fax the original return-to-work note to her. The note that Dr. Brown's office faxed to Parris stated December 19, 2011, as the return-to-work date. The return-to-work note issued by Dr. Brown also stated that Gleason had no work restrictions.

Food City concluded that Gleason had altered the date on the note, and Turner terminated Gleason on December 20, 2011, for presenting a falsified note from his health care provider. At Gleason's request, Dr. Brown sent Food City a fax stating that she had revised the return-to-work note, not Gleason. On the basis of Dr. Brown's fax, Food City rescinded the termination. Turner called Gleason and left a message letting him know the termination had been rescinded, and that Gleason should contact him to obtain a work schedule. Turner did not hear from Gleason for several days. Gleason eventually called Food City's Regional Human Resources Manager, Joe Greene. Greene told Gleason to contact Turner to obtain a schedule and return-to-work date. Gleason contacted Turner on December 24, and was instructed to return on December 26, 2011, to receive a work schedule, and to meet with Turner and Coffman.

During Gleason's absence, Turner asked Coffman to help with Bakery-Deli operations at the Clinton Store. Coffman reported that interdepartmental transfers had not been reported as required. Each department manager was required to complete the

5

reports monthly, so that Food City could accurately determine the profit and loss of each department.

On December 26, 2011, Gleason went to the Clinton store and met with Turner and Coffman. Turner and Coffman asked Gleason why the interdepartmental transfers had not been completed. Gleason stated that he previously told Turner and Coffman that the reports had not been completed; implied that other department managers did not complete transfers monthly; and that he had done some himself at the Lenoir City store with no consequences. Turner terminated Gleason in the meeting based on his failure to submit the interdepartmental transfers timely, his previous disciplinary record, and the poor condition of the Bakery-Deli department under his management.

Gleason filed a charge with the EEOC on May 23, 2012, alleging disability discrimination. The EEOC issued a Notice-of-Right-to-Sue on September 10, 2013. Gleason filed the instant Complaint on December 9, 2013.

## II. Summary Judgment Standard

Food City has moved for summary judgment on all of Gleason's claims. Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 330 n. 2 (1986); *Moore v. Philip Morris Co., Inc.,* 8 F.3d 335, 339 (6th Cir. 1993). All facts and inferences to be drawn therefrom must be viewed

in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. Ltd v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Keifer*, 301 F.3d 937, 942 (6th Cir. 2002).

Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. *Celotex*, 477 U.S. at 317. To establish a genuine issue as to the existence of a particular element, the nonmoving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Id.* at 250. The court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the court search the record "to establish that it is bereft of a genuine issue of fact." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson,* 477 U.S. at 250.

### III. State Law Claims are Time-Barred

Gleason is acting *pro se,* and his legal theories are not clear. To the extent that Gleason is asserting a claim under the Tennessee Disability Act (TDA), it is time-barred

7

because the statute of limitations for bringing such an action is one year. *See* Tenn. Code Ann. §§ 8-50-103(c)(2) and 4-21-311(d) (cause of action must be filed within one year of alleged discriminatory practice). Gleason was discharged on December 26, 2011, but did not file the instant action until December 9, 2013, almost two years later. Therefore, any claim brought under the TDA is time-barred.

Any claim for retaliatory discharge for filing a worker's compensation claim is also subject to a one-year statute of limitations. *See* Tenn. Code Ann. § 28-3-104; *Webber v. Moses,* 938 S.W.2d 387, 393 (Tenn. 1996). Therefore, any claim for retaliatory discharge under Tennessee law is time-barred.

In his response to defendants' motion, Gleason asserts that because he timely filed a charge with the EEOC, his claims under Tennessee law are timely.[1] However, Tennessee law makes it clear that the statute of limitations for bringing a direct court action is not tolled while administrative charges are pending with the EEOC. *See Burnett v. Tyco Corp.,* 932 F.Supp. 1039 (W.D.Tenn. 1996). Accordingly, the court finds that all claims asserted by Gleason under Tennessee state law are time-barred.

## IV. Supervisor Liability

Gleason has sued Turner and Slagle individually for their actions taken within their capacity as Food City managers. Individual supervisors who do not independently

---

[1] Despite the filing of Gleason's response beyond the deadline, the court has exercised its discretion to address the substantive issues raised by the parties, finding that defendants are not prejudiced by permitting Gleason to respond to the motion out of time.

8

qualify under the statutory definition of employers may not be held personally liable in ADA and Title VII cases. *See Sullivan v. River Valley Sch. Dist.,* 197 F.3d 804, 808 (6th Cir. 1999). Here, Gleason does not allege that Turner or Slagle took any actions toward him in any capacity other than as Food City managers. Accordingly, there is no legal basis on which to hold Turner and Slagle liable, and they will be dismissed as defendants in this action. The court will next address Gleason's claims for discrimination and retaliation under the ADA.

## V. Discrimination in Violation of the ADA

The ADA provides: "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment." 42 U.S.C. § 12112(a). To state a claim under the ADA, Gleason must demonstrate (1) he is covered by the ADA; (2) he suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) he was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) he suffered an adverse employment action because of his disability or perceived disability. *Capobianco v. City of New York,* 422 F.3d 47, 56 (2nd Cir. 2005).

Not every impairment is a "disability" within the meaning of the ADA. A disability under the ADA is defined as: (1) a physical or mental impairment that substantially limits a major life activity; (2) a record of such an impairment; or (3) being

9

regarded as having such an impairment. 42 U.S.C. § 12102(1). Working and lifting are major life activities. 42 U.S.C. § 121102(2)(A). Gleason claims that his fall and resulting back strain on November 18, 2011, qualifies as a disability under the ADA because it substantially limited a major life activity (working and lifting), and because he was regarded as having a disabling impairment.

Generally, short term, temporary restrictions are not "substantially limiting" and do not render a person disabled under the ADA. *See Presutti v. Felton Brush Inc.,* 927 F.Supp. 545 (D.N.H. 1995) (back injury resulting in a temporary leave of absence is not a "disability" under the ADA); *Vulcu v. Trilox Research Lab. Inc.,* 993 F.Supp. 623, 626 (N.D.Ohio 1998) (temporary back injury not a disability because "it is well established that the Act was never intended to apply to persons suffering from temporary conditions or injuries"); *Adams v. Citizens Advice Bureau,* 187 F.3d 315, 316-17 (2nd Cir. 1999) (temporary neck, back and knee injury lasting three and one-half months is not a disability within the meaning of the ADA); *Curry v. Cyprian Ctr.,* 17 Fed.Appx. 339 (6th Cir. 2001) (temporary condition caused by back injury insufficient to render plaintiff "disabled" within meaning of ADA); *Nasser v. City of Columbus,* 92 Fed.Appx. 261 (6th Cir. 2004) (temporary back injury not disabling); *De La Rosa v. Potter,* 427 Fed.Appx. 28, 29 (2nd Cir. 2011) (temporary back injury not substantially limiting).

Here, Gleason's restrictions were temporary and not severely restrictive. He fell on November 18, missed a few days of work, then returned to work with a 10 to 15 pound lifting restriction and a restriction from excessive standing on November 24. On November 29, he presented restrictions that limited him to working five days a week,

10

eight hours per day. On December 19, he presented a return-to-work note stating he could return to work with no restrictions. His temporary restrictions on lifting and on the hours he worked lasted about one month. Because his work restrictions lasted for only one month, the court finds that Gleason's disability was temporary. Therefore, Gleason has failed to allege a physical impairment other than a short-term temporary restriction, and his injury is not covered under the ADA. Accordingly, because Gleason was not disabled; and he cannot maintain a claim under the ADA, whether based on an alleged failure to accommodate, or on an allegedly hostile work environment, or on retaliatory discharge.

Nor can Gleason show that Food City regarded him as disabled. Under the ADA, a plaintiff will be regarded as having a qualifying impairment "if the individual establishes that he or she has been subjected to an action prohibited under the Act because of an actual or perceived physical or mental impairment, whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). Gleason alleges that Food City regarded him as disabled. He cannot maintain a claim on a "regarded as disabled" basis, because his impairment lasted less than six months. The "regarded as disabled" prong does "not apply to impairments that are transitory and minor." 42 U.S.C. § 12102(3). An impairment is transitory if it has "an actual or expected duration of 6 months or less." 42 U.S.C. § 12101(3)(B). The record shows that Gleason's impairments lasted only about one month. The fact that Gleason had been cleared to work without restriction by Dr. Brown precludes any finding that Food City "regarded" Gleason as disabled. Accordingly, he cannot maintain a "regarded as

11

disabled" claim. *See Vulcu,* 993 F.Supp. at 627 ("because plaintiff had been cleared to work without restriction, it is impossible to conclude that the employer regarded him as disabled"). Because Gleason was not "disabled," or "regarded as disabled," he is precluded from bringing any claim under the ADA for failure to accommodate, hostile work environment, discriminatory/retaliatory discharge, or any other claim based on disability.

In support of his claims, Gleason has submitted documents from the Tennessee Department of Employment Security awarding him unemployment benefits after his termination. However, under Tennessee Code Annotated § 50-7-304(k), unemployment claims are not to be considered in any other action:

> No finding of fact or law, judgment, conclusion, or final order made with respect to a claim for unemployment compensation under this chapter may be conclusive in any separate or subsequent action or proceeding in another forum, except proceedings under this chapter, regardless of whether the prior action was between the same or related parties or involved the same facts.

The Sixth Circuit Court of Appeals has interpreted the Tennessee statute to mean that decisions of the Tennessee Department of Employment Security cannot be used in civil cases because they are the result of "quick and inexpensive hearings with different standards of proof than civil trials. As a result, an unemployment hearing officer's decision should not be admitted in an employment discrimination suit." *Fleming v. Sharp Mfg. Co. of Amer.*, 2012 WL 3049624 at *5 (W.D. Tenn. Jul. 25, 2012); *see also Reed v. Intermodal Logistics Serv. LLC,* 2011 WL 4565450 (W.D. Tenn. Sept. 29, 2011);

12

*Wright v. Columbia Sussex Corp.*, 2008 WL 972699 (E.D. Tenn. Apr. 7, 2008); *Pascual v. Anchor Advances Prods. Inc.*, 117 F.3d 1421 (6th Cir. 1997).

Based on this authority, the court finds that the Tennessee Department of Employment Security decision submitted by Gleason is not relevant, and therefore not admissible. As such, the decision may not be considered in connection with Gleason's opposition to defendants' motion. A party opposing a motion for summary judgment cannot meet the burden of coming forward with relevant evidence by simply relying on legal conclusions or evidence which would be inadmissible at trial. *See Sperle v. Michigan Dept. of Corr.,* 297 F.3d 483,495 (6th Cir. 2002) ("A party opposing a motion for summary judgment cannot use inadmissible evidence to create a genuine issue of material fact"). Accordingly, because any claims Gleason asserts under Tennessee state law are time-barred, and because Gleason cannot show that he was "disabled" or "regarded as disabled" under the ADA, the court finds that Food City is entitled to judgment as a matter of law on his Complaint.

## VI. Conclusion

In light of the foregoing discussion, defendants' motion for summary judgment [R. 18] is **GRANTED,** and this action is **DISMISSED in its entirety.**

Enter:

_____
**UNITED STATES DISTRICT JUDGE**